**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LISA M. RICHARDS,

      Plaintiff,                         CIVIL ACTION NO. 07-12626

   vs.                                 DISTRICT JUDGE NANCY G. EDMUNDS

                                       MAGISTRATE JUDGE MONA K. MAJZOUB

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

**RECOMMENDATION:** Plaintiff's Motion for Summary Judgment (docket no. 12) should be DENIED, and that of Defendant (docket no. 17) DENIED, and the case remanded for further proceedings in keeping with this Report.

\*\*\*

Plaintiff filed an application for Disability and Disability Insurance Benefits on May 19, 2003, alleging that she had been disabled and unable to work since October 8, 2002 as a result of an lupus, fibromyalgia and irritable bowel syndrome. (TR 55, 87). The Social Security Administration denied benefits. (TR 23, 38). A requested *de novo* hearing was held on January 4, 2006 before Administrative Law Judge (ALJ) Lawrence E. Blatnik. (TR 19, 273). The ALJ subsequently found that the claimant was not entitled to a period of disability or Disability Insurance Benefits because she was not under a disability at any time through the date of the ALJ's July 20, 2006 decision. (TR 14-19). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 3). The parties filed Motions for Summary Judgment. The issue Plaintiff raises for review is whether the ALJ's decision is supported

by substantial evidence on the record.

Plaintiff was thirty-seven years old at the time of the administrative hearing. (TR 280). Plaintiff has a high school education and operates a part time daycare business from her home with the assistance of her family members. (TR 132, 277, 303). The ALJ found that Plaintiff's earnings for the periods in question are below substantial gainful employment levels. (TR 16). This finding is not contested. Plaintiff testified that at the time of the hearing she was watching a three year old and a five year old on two to three days per week. (TR 283, 303). She also watches a ten-year old who comes over before school for forty-five minutes prior to catching the school bus. (TR 303). Plaintiff alleges that the children in her daycare are the children of friends, so if she is having a bad day she can call and tell them she is not working that day. (TR 277, 284). When she started the business in 2000 she watched six children full-time, from 40 to 50 hours a week, five days a week. (TR 283). Prior to the daycare business, Plaintiff had clerical jobs in accounts receivable and as a teller. (TR 88, 285, 287).

Plaintiff lives with her husband and three children. (TR 281). Plaintiff testified that she has a driver's license and drives about once a week. (TR 282). It is uncomfortable for her to drive or sit in a chair. (TR 282, 294). Plaintiff testified that as a result of her condition she aches "from head to toe" and has migraines caused from her neck, shoulder and back "being flared up." (TR 288). Her knees, elbows and forearms ache and her hands hurt when she holds anything. (TR 288). She testified that the aching is constant. (TR 289). Plaintiff testified that her diagnoses include fibromyalgia, overactive bladder, irritable bowel syndrome, Sjogren's syndrome and Raynaud's phenomenon, lupus, migraines, arthritis and plantar fasciitis. (TR 290). She also testified that she is losing the arches in her feet and she has bursitis in her hips. (TR 116, 290, 294). Plaintiff testified

that she has pain in her joints and muscles, redness, heat and swelling in the joints of her hands at least once a week and that humidity, cold and dampness increase her pain and discomfort. (TR 304-05). Plaintiff testified that she has about five days a month when she feels "okay," but they are not consecutive days. (TR 306). Plaintiff testified that her pain is an eight to a ten on a scale of ten. (TR 307). To manage her pain, Plaintiff takes Vicodin every four to six hours, Ultracet as needed and uses the Lidoderm patch everyday. (TR 307). She testified that sometimes the Vicodin improves the pain and the Ulatracet is less effective than the Vicodin. (TR 307). Plaintiff takes Flexeril at bedtime and Skelaxin three times a day as a muscle relaxer. (TR 308). The Skelaxin and Vicodin make her drowsy. (TR 308). For her lupus, Plaintiff takes Imuran, Plaquenil, Mobic, Flexeril, Vicodin, one aspirin per day and Topamax. (TR 308). Plaintiff also takes steroid or Prednisone when her conditions flare up. (TR 309).

Plaintiff testified that she attends physical therapy three times a week for four to six weeks. (TR 289). The record contains only two instances of physical therapy notes. Plaintiff testified that a steroid shot and the physical therapy have helped her stiff neck. (TR 309). Plaintiff testified that she aches too much to exercise. (TR 293). She can only walk from one room to the next before she has to sit down and take a break and she can only stand for two to three minutes before she needs to take a break. (TR 293-94). She lies down when she is tired but it is uncomfortable for her to lie on her sides and hurts to lie on her back. (TR 294). She testified that she can lift or carry five pounds or less; she can carry a gallon of milk but it hurts her arms to do so and she could not carry it across a room. (TR 295). She can bend over but it hurts her back to do so. (TR 296). She testified that it is difficult for her to hold the steering wheel or a pen. (TR 297). Her husband does the grocery shopping and her daughters do the household chores, including cleaning the house and

3

doing laundry and dishes. (TR 108, 110, 297). Plaintiff has trouble sleeping through the night due to her overactive bladder and because she cannot get comfortable. (TR 108, 123, 298-99). She is able to bathe and dress herself. (TR 109, 298). Plaintiff used to enjoy hobbies like lying in the sun, bowling, crafting and woodworking but now she has no hobbies. (TR 108, 300). In March 2004 Plaintiff reported that she aches from head to toe, cannot lift her head up off her bed and cannot walk up and down stairs. (TR 126).

In response to the ALJ's questioning, Plaintiff testified that she could not do an eight-hour a day job. (TR 301-02). Plaintiff testified that she needs a two to three-hour nap every afternoon and sometimes on the weekends she will sleep all day. (TR 301).

### *Vocational Expert*

The Vocational Expert (VE) testified that Plaintiff's past relevant work as a teller was semiskilled and light performed at light to medium exertion because Plaintiff lifted up to twenty-five pounds. (TR 313). Plaintiff's accounts receivable work was semiskilled, sedentary level and her childcare or child monitor position is semiskilled, medium exertion performed at the sedentary exertional level. The ALJ asked the VE to consider an individual who cannot lift or carry more than 10 pounds occasionally, less than 10 pounds frequently, can sit for at least six hours a day, stand and walk up to two hours each during an eight-hour workday, who needs to stand and stretch for about ten minutes every hour, cannot climb ladders, ropes or scaffolding, is limited to only occasional climbing of ramps and stairs and occasional stooping, kneeling, crouching, crawling, bending, twisting, and turning at the waist. (TR 313). The individual needs to avoid concentrated exposure to extreme cold and cannot "use power torque, [inaudible] or other vibratory tools." (TR 314). The individual needs to take a brief bathroom break every hour or so. The VE testified that this

4

individual could do the accounts receivable work and the childcare as performed. (TR 314).

The VE testified that if the limitations also included a sit/stand option to change position at will to relieve pain or discomfort and limited to frequent, not constant, reaching and handling with both upper extremities, Plaintiff would be able to perform the childcare. As for accounts receivable, it would depend on how often she needed to stand. (TR 314). If the standing were only for two to three minutes maximum, she could do the accounts receivable work. (TR 315). The VE further testified that if Plaintiff were in pain on average at a level of eight to ten on a ten scale, was required to nap two to three hours per day, and had twenty-five to thirty bad days per month, this combination would be work preclusive. (TR 316). The ALJ also asked the VE to consider a hypothetical individual "based on Dr. Feickner's (sic) reports and the sworn statement," who could sit two hours total in an eight-hour day, lift less than five pounds occasionally and would need to lie down for the remainder of the eight-hour day. (TR 317). The VE testified that such an individual would not be able to do Plaintiff's prior work or any other work. (TR 317).

### *Medical Evidence*

Plaintiff was diagnosed with Lupus in 1997 based upon a positive ANA (antinuclear antibody) test. (TR 242). Justus J. Fiechtner, M.D. is a rheumatologist who has treated Plaintiff since October 1997. (TR 236, 265-66). The record shows regular examinations and treatment for Plaintiff's lupus and fibromyalgia. (TR 137-155). Throughout her examinations with Dr. Fiechtner, Plaintiff regularly exhibited multiple areas of muscle tenderness at her examinations. (TR 137, 140, 141, 145, 148, 151, 213, 215, 216). In 2002 and into 2003 Plaintiff also exhibited and was treated for skin lesions as a result of the lupus. (TR 137-144). In April 2002 Plaintiff was off her medication because she could not afford them and she had a lupus flare up. (TR 148, 246). In

November 2002 Dr. Fiechtner noted that Plaintiff's fibromyalgia "appears to be flaring significantly." (TR 141). The doctor suggested Prednisone 5 mg for one week and then tapering, prescribed Skelaxin 400 to 800 mg every eight hours prn for back pain, gave Plaintiff Lidoderm patches and suggested she use Ultracet for break through pain. (TR 141).

In January 2003 Dr. Fiechtner noted that Plaintiff still was "not doing any regular excise program," and she continued to complain of generalized musculoskeletal pain. (TR 140). She exhibited tenderness over all of her joints. (TR 140). The doctor suggested physical therapy to decrease her joint pain and help with muscle conditioning and range of motion. (TR 140). He also suggested she go back on Prednisone beginning at 10 mg per day to quell the flare up about which she complained. (TR 140). On April 17, 2003 Dr. Fiechtner noted generally normal range of motion of the upper and lower extremities. (TR 137). He discussed Plaintiff's skin lesions and Plaintiff did not wish to have the lesions injected, as recommended by a dermatologist. (TR 137). The doctor also recommended Plaintiff use Topamax 25 mg as a neural pain blocker to help with headaches and other aches and pains. (TR 137). Plaintiff complained of severe ongoing problems with gastric distress and the doctor suggested she stop taking Vioxx. (TR 137). Plaintiff continued to complain of headaches and migraine headaches on April 17, 2003, September 3, 2003, February 16, 2004, April 14, 2004, November 19, 2004, March 25, 2005, August 2, 2005 (TR 137, 177, 179, 214, 215, 216, 231). On December 10, 2003 Plaintiff presented with reduced range of motion of her spine due to muscle pain. (TR 183). Her lupus was "under relatively good control based upon laboratory studies." (TR 183).

On August 11, 2004 Dr. Fiechtner reported decreased range of motion of Plaintiff's neck and spine. The doctor recommended a short burst of Prednisone to relieve her musculoskelatal pain

6

symptoms, consider increasing her Plaquenil to 600 mg daily, increasing Topamax and prescribing Skelaxin as a muscle relaxant for pain not relieved by Topamax. (TR 213). On November 19, 2004 Dr. Fiechtner again reported a slight decrease in motion in Plaintiff's neck, decrease in range of motion of the LS spine and mild tenderness over most of her joints and several of her peripheral muscle groups. (TR 179). Plaintiff reported several falls, some unexplained, so the doctor ordered an EMG of the bilateral lower extremities to rule out possible myositis. (TR 179).

The record includes an August 26, 2005 deposition of Dr. Fiechtner wherein he testified that the main treatment for fibromyalgia is exercise and medication to alleviate symptoms. (TR 241, 252). He testified that "virtually none of our patients with fibromyalgia get better unless they exercise." (TR 252). The record is replete with notes from Dr. Liechtner advising Plaintiff to exercise to control her fibromyalgia, including on April 23, 2002, August 6, 2002, October 15, 2002, December 10, 2003, February 16, 2004. (TR 144, 145, 148, 183, 215, ). On March 25, 2005 Plaintiff complained of continuing fluid retention, stiffness, joint pain, migraine headaches, general aching and poor sleep. (TR 177). Dr. Fiechtner noted that he "had a long talk with the patient about the nature of fibromyalgia and explained to her that exercise is crucial." (TR 177). The doctor told Plaintiff that "as long as she is not exercising she is not doing everything that she can to treat her fibromyalgia and this does not work in her favor." (TR 177). The doctor explained that by Plaintiff's decision to stop the Mobic medication and continue the Vicodin and Darvocet, she was not addressing the nature of her problem, only the pain. (TR 177). On August 2, 2005 Dr. Fiechtner reported that Plaintiff was "engaging in no physical activity whatsoever." (TR 231). The doctor reminded her that taking Vicodin does not address the cause of the pain and reminded her of "the

importance of exercise currently." (TR 231).

Dr. Fiechtner testified that on Plaintiff's August 2, 2005 examination she exhibited multiple tender points and therefore, her fibromyalgia was still active. (TR 250). Dr. Fiechtner testified that Plaintiff's pain symptomatology is moderately severe and is activity dependent. (TR 258). Dr. Liechtner opined that Plaintiff's fatigue symptomatology is also moderately severe and he does not believe she has the energy or stamina to work an eight-hour day. (TR 258). The doctor testified that Plaintiff's prognosis was guarded at best and he suspected that Plaintiff would have her symptoms "forever." (TR 257).

In March 2004 Plaintiff treated for her skin lesions in her scalp with Kim D. Wilson, NP-C, supervised by James W. Wilkins, Jr., M.D. (TR 171). On June 30, 2004 Tony E. Pinson, M.D. evaluated Plaintiff for recurrent urinary tract infections. (TR 172). Dr. Pinson suspected some of Plaintiff's other complaints may be overactive bladder symptomatology. (TR 172). Plaintiff sought a second opinion from Eric Todd, M.D. on October 27, 2004, who prescribed Detrol for the overactive bladder symptoms. (TR 176). Dr. Todd noted that Plaintiff was having a fairly good response to the Detrol. (TR 176). Plaintiff attended physical therapy on October 4, 2004 as prescribed by Dr. Leppert. (TR 173-74).

On August 16, 2003 D. Tanna, M.D. completed a state agency Physical Residual Functional Capacity Assessment and concluded that Plaintiff had the following exertional limitations: occasionally lift and/or carry ten pounds, frequently lift and/or carry ten pounds, stand and/or walk at least two hours in an eight-hour workday, sit about six hours in an eight-hour workday, and unlimited as to pushing or pulling with the extremities. (TR 161). Plaintiff was limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling and

never climbing ladders, ropes and scaffolds. (TR 162). Plaintiff was limited to frequent reaching and handling. (TR 163). Plaintiff should avoid concentrated exposure to extreme cold due to her Raynaud's Syndrome. (TR 164). The consultant concluded that the degree of claimant's alleged limitations was not supported by the medical record and her statements were found partially credible. (TR 165). Mila C. Bacalla, M.D., consultant, agreed with the DDS's severity assessment and noted that the "proposed RFC is generous but there is no evidence to refute it." (TR 168-70).

An April 15, 2005 physical therapy Initial Evaluation and Plan of Care notes that Plaintiff complained of difficulty with all ADLs including stairs, walking, standing for two minutes, getting in and out of vehicles, and driving after 10 minutes. Plaintiff rated her pain as a 9 of 10 at its worst and a 5 of 10 at its best. (TR 229). The therapist noted that Plaintiff had full active range of motion into all planes of the ankle and foot with pain at each end of the full range. (TR 229).

Plaintiff also treated with William Leppert, M.D. from June 18, 2003 to May 5, 2005 for assorted complaints and conditions including urinary tract infections, headaches and neck and shoulder pain. (TR 199-205). Plaintiff occasionally received treatment at an after hours medical clinic from May 18, 2003 to April 16, 2005 for conditions including leg pain, recurring urinary tract infections, a migraine headaches and injury to her left knee caused by a fall. (TR 189-195).

**ADMINISTRATIVE LAW JUDGE'S DETERMINATION:**

The ALJ found that although Plaintiff met the disability insured status requirements through December 31, 2005, had not engaged in substantial gainful activity since 2003, and suffered from systemic lupus erythematosus, fibromyalgia, and irritable bowel syndrome, all severe impairments, she did not have an impairment or combination of impairments that met or equaled the Listing of

Impairments. (TR 16). Additionally, the ALJ found that Plaintiff's statements concerning the intensity, duration and limiting effects of her symptoms were not entirely credible. (TR 18). The ALJ found that Plaintiff was capable of performing her past relevant work as a child care worker and an accounts receivable clerk. (TR 19). Therefore she was not suffering from a disability under the Social Security Act. (TR 19).

## **STANDARD OF REVIEW:**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Commissioner*, 203 F.3d 388, 389-90

(6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**DISCUSSION AND ANALYSIS:**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) she was not presently engaged in substantial gainful employment; and

(2) she suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) she did not have the residual functional capacity to perform her relevant past work.

*See* 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). If Plaintiff's impairments prevented her from doing her past work, the Commissioner, at step five, would consider her residual functional capacity ("RFC"), age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualification to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

Plaintiff argues that the ALJ's decision is not supported by substantial evidence. Plaintiff argues that the ALJ failed to appropriately evaluate and give weight to the treating physician's opinion, summarized the treating physician's thirty-page deposition in one sentence, and erroneously concluded that no physician had stated that Plaintiff was "disabled" when Plaintiff's treating physician had stated that Plaintiff could not perform even a limited range of sedentary work on a sustained basis. Plaintiff further argues that the ALJ's findings concerning Plaintiff's pain and credibility are not supported by substantial evidence because the ALJ misstated the law concerning fibromyalgia, Plaintiff's fibromyalgia is well-documented in the record and Plaintiff's long-term treating specialist believes her pain and fatigue are disabling. (Docket no. 12 at i).

As an initial matter, Plaintiff filed an application for Disability Insurance Benefits on September 27, 2000. (TR 28). Following an August 22, 2002 hearing an administrative law judge found that Plaintiff was not disabled at any time through the October 7, 2002 date of the decision. (TR 28, 33). Plaintiff's current application, before this Court, alleges an onset date of October 8, 2002. (TR 14, 55).

## *Treating Physician Doctrine*

First, the ALJ's statement that "[n]one of the claimant's physicians have stated that she is totally disabled," when Plaintiff's treating physician opined that she could not perform sedentary work on a sustained basis, is not error in itself. (TR 18). The ultimate finding of disability is reserved to the Commissioner. Although it is proper for the ALJ to give a treating physician's opinion controlling weight, the Social Security Administration Regulations do not afford the same deference to opinions on an issue reserved to the Commissioner, such as a final determination of "disabled" or "unable to work." Dispositive administrative findings relating to the determination

of a disability and Plaintiff's RFC are issues reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e)(1), (2).

The ALJ "is not required to accept a treating physician's conclusory opinion on the ultimate issue of disability." *Maple v. Commissioner of Social Security*, 14 Fed. Appx. 525, 536 (6th Cir. 2001); *see also* 20 C.F.R. § 404.1527(e). However, it is well settled that the opinions and diagnoses of treating physicians are generally accorded substantial deference. Under 20 C.F.R. § 404.1527(d)(2), the ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. The Sixth Circuit has stated that "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 529-30.

If an ALJ rejects a treating physician's opinion, he must "give good reasons" for doing so in his written opinion. *See* 20 C.F.R. 404.1527(d)(2); *see also* SSR 96-5p and 96-2p. Furthermore, the Sixth Circuit has noted that the ALJ must provide good reasons for the weight given a treating source's opinion. *Wilson v. Comm'r of Social Sec'ty*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (*citing* SSR 96-2p, 1996 WL 374188, at *5).

The ALJ found that Plaintiff had the RFC to perform work involving: (1) lifting ten pounds occasionally and less than ten pounds frequently, (2) stand and walk for up to two hours in an eight-hour workday, (3) sit for at least six hours in an eight-hour workday, (4) a sit/stand option as needed to walk or stretch for approximately ten minutes every hour, (5) never climb ladders, scaffolds or

ropes, (6) only occasionally climb ramps or stairs, stoop, crouch, kneel or crawl, (7) only occasionally bend, twist or turn at the waist, (8) able to reach frequently with either upper extremity and frequently handle with both hands, (9) avoid concentrated exposure to extreme cold, (10) no use of air, pneumatic torque or power tools and (11) ability to take a brief restroom break every hour. (TR 17). Plaintiff argues that on August 26, 2005, Plaintiff's treating specialist opined in his deposition that Plaintiff would *not* be able to perform the following exertional requirements of sedentary work: (1) Lift no more than ten pounds at a time and occasionally lift or carry small objects like dockets, files, ledgers or small tools, (2) sit approximately six hours of an eight-hour workday and (3) lift up to ten pounds occasionally. (TR 260-61). Dr. Fiechtner testified that Plaintiff would not be able to perform this level of work on a sustained basis of forty hours per week, less reasonable time for lunch and breaks, at any time since October 2002. When asked "why" Plaintiff would not be able to perform, he stated, "Well, until she tries it, I suppose you couldn't really say that you'd have 100 percent proof, but based on our observation and her symptomology, I would say she would be incapable of doing that." (TR 261). Dr. Fiechtner further testified that he substantially held his opinion of August 7, 2002 to be true at the time of the deposition, including that Plaintiff could sit for approximately two hours total in an eight-hour day, stand and walk less than one hour in an eight-hour day and was unable to lift up to five pounds. (TR 262).

The ALJ did not discuss Dr. Fiechtner's opinion that Plaintiff could sit for approximately two hours of an eight hour day, walk less than an hour and could not lift five pounds. Nor did he discuss Dr. Fiechtner's opinion that Plaintiff could not engage in a sustained forty-hour per week level of work that included the same exertional levels as the ALJ's RFC. Although the ALJ is not

required to accept Dr. Fietchner's opinion on the ultimate issue of Plaintiff's disability or her RFC, he is required to provide good reasons for rejecting a treating physician's opinion. The ALJ did not provide a reason for failing to adopt the doctor's opinion regarding the effects of Plaintiff's lupus and fibromyalgia. The ALJ did not address this line of testimony other than to state that the doctor "classified these conditions as moderately severe." (TR 17). The ALJ failed to provide an analysis of the weight he ascribed to the opinions of Plaintiff's treating physicians. Therefore, the case must be remanded so that the ALJ may conduct a proper analysis of Dr. Liechtner's opinion regarding Plaintiff's physical limitations in their entirety. To the extent the ALJ rejects Dr. Liechtner's opinion, the ALJ must specifically cite to the medical findings or other record evidence that support his determination. If such an analysis alters Plaintiff's RFC then the ALJ must also conduct a step five inquiry as would be appropriate.

The ALJ pointed to the record where Plaintiff's doctor repeatedly noted that Plaintiff needed to exercise to improve her condition. (TR 17). As Defendant points out, the ALJ may properly consider a claimant's failure to follow prescribed treatment in determining the claimant's credibility. *See Rogers v. Barnhart*, 446 F. Supp. 2d. 828, 834 (N.D. Ill. 2006) ("Failure to follow a prescribed course of remedial treatment without good cause can be grounds for denying an application for benefits, . . . , and can weigh against a claimant's credibility." Citations omitted.). The record is replete with references to Plaintiff's need to exercise to control her fibromyalgia, and her failure to do so. The ALJ cited four instances in the record where Plaintiff's physicians either recommended exercises to control Plaintiff's fibromyalgia, noted Plaintiff's noncompliance with exercises or medication, or discussed with Plaintiff the importance of exercise to improving her condition. (TR 16-17). The ALJ also concluded that Plaintiff continually failed to take her medications as

15

prescribed. (TR 17). However, the ALJ failed to engage in further analysis of these circumstances. In at lease one instance in the record, it is noted that Plaintiff did not take her medications due to financial reasons. (TR 148). The ALJ did not provide sufficient analysis and reasons for using Plaintiff's noncompliance in weighing her credibility. Similarly, if the ALJ used Plaintiff's lack of compliance as a basis for denying her application, he did not engage in the full analysis necessary to do so and did not inquire into the reasons for Plaintiff's noncompliance. *See* SSR 82-59.

### *ALJ's Findings Regarding Plaintiff's Statements of Pain and Credibility*

Plaintiff argues that the ALJ did not properly assess her complaints of pain and her credibility. Claims based upon fibromyalgia are of the type where "the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition." *Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). "[T]he complaints of pain, stiffness, and fatigue associated with the condition are the source of the alleged disability." *Id.* "Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain." *Id.* (Citations omitted); 20 C.F.R. § 404.1529(a). "First, the ALJ will ask whether the (sic) there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms." *Id.* at 247; 20 C.F.R. § 404.1529(a ). The ALJ made a finding "that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms." (TR 18). Second, "if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Rogers*, 486 F.3d at 247. The ALJ made a general statement that he assessed Plaintiff's allegations of pain "as required by 20 CFR 404.1529." (TR 18).

16

The ALJ should consider such relevant factors as "the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve the symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions." *Id.* at 247; *see also* 20 C.F.R. §§ 404.1529(c)(3), *Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters,* 127 F.3d at 531. Credibility assessments are not insulated from judicial review. Despite deference due, such a determination must nevertheless be supported by substantial evidence. *See id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186.

The ALJ's consideration of Plaintiff's pain complaints and credibility does not comport with the Administration's requirements. The ALJ states only generally that he considered the factors as set forth above. (TR 18). However, he does not specifically identify the factors, statements and evidence he considered. (TR 18). It is not enough to merely recite the standard and state that it was followed. With regard to Plaintiff's credibility, the ALJ stated that Plaintiff's "testimony that she suffers from more severe limitations, including the need to lie down frequently during the day, are (sic) not supported by the treatment records from her treating physician, Dr. Fietchner (sic)." (TR 18). The ALJ also states that "these limitations" are inconsistent with record evidence that Plaintiff

17

"continues to operate a child care business and care for three children including one 'special needs' child with Down (sic) syndrome."[1] (TR 18). Dr. Fiechtner was asked in his deposition whether Plaintiff would still periodically need to lay down either because of pain or fatigue and Dr. Fiechtner responded "yes." (TR 263). The ALJ did not address Dr. Fiechtner's statement, which is contrary to the ALJ's statement that Plaintiff's need to lie down is not supported by Dr. Fiechtner's treatment records.

Further, although the ALJ finds that Plaintiff's limitations are inconsistent with operating a child care business, the ALJ has not addressed testimony that Plaintiff is assisted by her own children and her husband in running the business, the business has decreased substantially since her alleged onset date to the point where the ALJ found that her earnings do not constitute substantial gainful activity, Plaintiff testified that she can sit if she needs to with the children at the home and finally, the consumers for her service are friends whom she can call and cancel if she is having a "bad" day. (TR 277, 284, 292, 303). Although the record may contain substantial information to support the ALJ's conclusions regarding Plaintiff's symptoms, including pain, and credibility, it is not the Court's function to remedy the ALJ's error by independently searching the record to find substantial evidence to support his ultimate decision. *Wilson*, 378 F.3d at 546. The ALJ's determination of Plaintiff's credibility was critical because the VE expressed the view that some of Plaintiff's alleged limitations could preclude or at least impact Plaintiff's ability to work. (TR 315-17). Therefore, upon remand, the ALJ must re-evaluate Plaintiff's credibility, citing to which of Plaintiff's claims are or are not credited and to the evidentiary basis for his or her conclusions.

---

[1]The parties argue about the ALJ's statement and whether he meant that the "special needs" child was a child-care client or Plaintiff's own. The "special needs" child is Plaintiff's own. However, this issue does not effect the Court's analysis.

**CONCLUSION**

The Commissioner's decision is not supported by substantial evidence. Defendant's Motion for Summary Judgement (docket no. 17) should be DENIED. Plaintiff's Motion for Summary Judgment (docket no. 12) should be DENIED. The case should be REMANDED for further proceedings consistent with this Report.

**REVIEW OF REPORT AND RECOMMENDATION:**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: July 14, 2008                s/ Mona K. Majzoub
                                    MONA K. MAJZOUB
                                    UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: July 14, 2008                s/ Lisa C. Bartlett
                                    Courtroom Deputy